# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALFONSO CAVADA, et al., | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 13 CV 1916 |
| | ) |
| v. | ) Hon. Charles R. Norgle |
| | ) |
| CITY OF CHICAGO, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court are Plaintiffs Alfonso Cavada ("Alfonso"), Patricia Cavada ("Patricia"), and Ricardo Aguilar's ("Ricardo") (collectively, "Plaintiffs") motion for attorneys' fees and costs, seeking $55,175.00, and their motion for additional attorneys' fees, seeking $10,132.50, for a total of $65,307.50. Also before the Court is Plaintiffs' motion seeking prejudgment interest on the attorneys' fees. For the following reasons, the motion for attorneys' fees is granted in part and denied in part, the motion for additional attorneys' fees is denied, and the motion for an order granting prejudgment interest on attorneys' fees is granted.

## I. BACKGROUND

On March 12, 2013, Plaintiffs initiated this civil rights lawsuit against Defendants Officer Gonzalez, Officer Salgado, Officer Cahue, Officer Silva, Officer Garcia, Officer Vanek, Officer De La Rosa, Officer Rojas, Officer Perez, Officer McNichols, Officer Leahy, and Sergeant Casey (collectively, "Defendant Officers"), alleging excessive force, failure to intervene, and false arrest pursuant to 42 U.S.C. § 1983, and seeking indemnification against the City of Chicago (the "City") under Illinois state law. The City filed a motion to dismiss the

indemnification claim, which was granted on May 24, 2013. After six months of litigation and the completion of written discovery, Defendant Officers tendered an offer of judgment pursuant to Federal Rule of Civil Procedure 68 to Plaintiffs in the amount of $10,001.00 in favor of Alfonso, $27,501.00 in favor of Patricia, and $2,501.00 in favor of Ricardo, plus reasonable attorneys' fees and costs accrued to the date of the offer, August 30, 2013, in an amount to be determined by the Court. Plaintiffs accepted the Rule 68 offer on September 9, 2013. Judgment was entered in favor of Plaintiffs and against Defendant Officers on September 30, 2013. Plaintiffs now move for attorneys' fees and costs and an order granting prejudgment interest on attorneys' fees. The motions are fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

"Section 1988(b) allows prevailing parties in § 1983 litigation to recover a reasonable attorney's fee, and the district court is in the best position to make the contextual and fact-specific assessment of what fees are reasonable." Montanez v. Simon, 755 F.3d 547, 553 (7th Cir. 2014) (internal quotation marks and citation omitted). To determine the amount of a reasonable attorneys' fee award, district courts generally begin by calculating the lodestar, i.e., the number of hours reasonably expended on the litigation multiplied by an attorney's reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C., 574 F.3d 852, 856 (7th Cir. 2009). "The district court may then adjust that figure to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." Schlacher, 574 F.3d at 856-57 (citations omitted).

2

## B. Motion for Attorneys' Fees and Costs

Plaintiffs' fee petition seeks $1,307.84 in costs, and $55,175.00 in attorneys' fees for 176.6 hours of work, divided between three attorneys, Brendan Shiller ("Shiller"), April Preyar ("Preyar"), and Mary Grieb ("Grieb"), as well as three paralegals as follows:

| Attorney | Hourly Rate | Hours | Total Fees |
|---|---|---|---|
| Shiller (partner) | $500 | 36.1 | $18,050[1] |
| Preyar (partner) | $500 | 0.3 | $150 |
| Grieb (associate attorney) | $300 | 117.6 | $35,280 |
| **Paralegal** | | | |
| Roberto Lopez | $75 | 10.9 | $817.50 |
| Monica Gonzalez | $75 | 10.5 | $787.50 |
| Jason Lopez | $75 | 1.2 | $90.00 |
| | | 176.6 | $55,175 |

### 1. *Hours Expended*

Defendant Officers argue that Plaintiffs' fee petition includes an unreasonable and excessive number of hours claimed for attorney labor. "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." Fox v. Vice, 131 S. Ct. 2205, 2216 (2011). Furthermore, "in determining the number of hours 'reasonably expended' by counsel in the litigation, the court should ensure that counsel exercises 'billing judgment.'" Spegon v. Catholic Bishop of Chi., 175 F.3d 544, 553 (7th Cir. 1999). In examining whether Plaintiffs' attorneys exercised "billing judgment," the Court has broad discretion to strike improper or inadequately recorded billing entries such as

---

[1] Plaintiffs' attorneys' claimed hours and rate for Shiller amounts to $18,050 not $17,990 as stated in their petition.

3

hours that are not properly billed to one's client, hours billed at an attorney rate for "tasks that are easily delegable to non-professional assistance," and hours billed at a paralegal rate for clerical tasks. Id. (internal quotation marks and citation omitted); see also Montanez, 755 F.3d at 555-56.

Here, Plaintiffs' attorneys improperly billed for both attorney time and paralegal time spent on administrative and clerical work. For example, Shiller filed numerous court documents such as the complaint, civil cover sheet and appearance forms and billed at $500 an hour for these tasks; Grieb too filed court documents and billed attorney time of $300 an hour for other clerical tasks such as formatting and indexing. Plaintiffs' attorneys also improperly billed time for its paralegals to open the case file, create a hard file, scan files and records, print, and file documents. The Court therefore strikes the billing entries identified by Defendant Officers as clerical tasks, with the exception of the time billed by Grieb for preparing discovery documents for production. See Def. Officers' Resp. to Pls.' Pet. for § 1988 Att'ys' Fees & Costs, Ex. B.

Additionally, Grieb spent excessive time on a relatively simple matter—namely, drafting written discovery requests to the City and Defendant Officers. The Court is not convinced that claiming 7.9 hours of attorney time to create one basic set of interrogatories and then reuse substantially the same interrogatories for each defendant is an exercise of proper billing judgment. There is no indication that the written discovery requests were tailored in any meaningful way to each individual defendant. It is not a daunting task to discover boilerplate interrogatories in this District where hundreds of excessive force cases are filed against the City and its police officers annually. The Court therefore strikes two hours as unreasonably expended. See Hensley, 461 U.S. at 434 ("The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." (citation omitted)). In total, the

Court disallows 3.8 hours of paralegal time, .7 hours of Shiller's time, and 8.5 hours of Grieb's time as claimed by Plaintiffs' attorneys.

### 2. *Hourly Rates*

Next, Defendant Officers argue that the hourly rates asserted by Plaintiffs' attorneys are excessive. "The party seeking a fee award bears the burden of establishing the market rate for the work; if the lawyers fail to carry that burden, the district court can independently determine the appropriate rate." Montanez, 755 F.3d at 553 (citing Johnson v. GDF, Inc., 668 F.3d 927, 933 (7th Cir. 2012)). "The best evidence of the market rate is the amount the attorney actually bills for similar work, but if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." Id. (citing Johnson, 668 F.3d at 933).

Shiller and Preyar, the two most senior attorneys on the litigation team, seek an hourly rate of $500 an hour. Grieb, an associate attorney, seeks an hourly rate of $300 an hour. In support of their proposed rates, Plaintiffs' attorneys submit retainer agreements with other clients that show hourly rates between $450 and $600 for the two partners and hourly rates between $250 and $300 for the associate attorney. These retainer agreements, however, involve different markets: complex federal criminal defense, state court criminal defense (Driving Under the Influence and First Degree Murder) environmental, contractual, zoning and land use matters, as well as representation solely as to the vacutur of a default in civil litigation. Plaintiffs' attorneys fail to provide any evidence that the prevailing market rate for these types of legal services is similar or comparable to civil rights services. See id. at 554. Additionally, the retainer agreement entered into with Plaintiffs in this case is in Spanish and provides no meaningful support for the asserted rates.

To the extent that Plaintiffs' attorneys rely on the Expert Report of Bruce R. Meckler (the "Meckler Report"), this submission has no bearing on the rates counsel seeks in this matter and is therefore disregarded. The Meckler Report was prepared for and submitted in conjunction with a complex civil rights class action lawsuit—challenging the use of unjustified and sexually-intrusive search procedures on men and women at the Cook County Jail—which was before another court in this District, Young v. County of Cook, No. 06 C 552 (N.D. Ill. filed Jan. 30, 2006). The context for the rate analysis is specific to that case—namely, the complex nature of the litigation, the representation of the class plaintiffs, the litigation strategy, and the high quality of work product submitted by the Lovey & Lovey attorneys in litigating that matter.

Likewise, the affidavit of another Chicago attorney, Anthony Burch ("Burch"), provides little evidentiary value to support the market rate Plaintiffs' attorneys propose. Burch, a tenth year attorney, merely states that his normal hourly rate for criminal defense is $400 an hour, while his normal hourly rate for family law work is $350 an hour. Burch further states that he has charged as much as $500 an hour for his work, but he fails to include any circumstances in which he has charged a client at that rate. According to Burch, Shiller and Grieb's rates are commensurate with the market for attorneys of their skill level and experience. However, Burch's conclusory assertion, without reference to specific rates awarded to other civil rights attorneys of comparable experience, is unhelpful in establishing the reasonable market rate. See Montanez, 755 F.3d at 553 ("[C]onclusory affidavits from attorneys merely opining on the reasonableness of another attorney's fee—unlike affidavits describing what comparable attorneys charge for similar services—have little probative value." (internal quotation marks and citation omitted)). Plaintiffs' attorneys' self-serving affidavits fair no better as probative evidence. Such affidavits alone "cannot satisfy the plaintiff's burden of establishing the market

rate for that attorney's services." Spegon, 175 F.3d at 556 (citing Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)).

The Court also declines to apply the Laffey Matrix chart of hourly rates, published by the U.S. Attorneys' Office for the District of Columbia; it is not an appropriate source of evidence of the local market rate for Plaintiffs' attorneys' services in this District. Indeed, the Seventh Circuit has expressed its skepticism about applying the Laffey Matrix outside of Washington, D.C. Montanez, 755 F.3d at 554 (citing Pickett v. Sheridan Health Care Ctr., 664 F.3d 632, 649 (7th Cir. 2011)). In any event, the Court notes that the rates reflected in the Laffey Matrix are not in line with attorneys' fees awarded to Plaintiffs' attorneys' in a recent civil rights case as well as other rates awarded to similarly experienced civil rights attorneys in Chicago.

In Montanez, the district court awarded an hourly rate of $385 for Shiller and Preyar, who had nine and thirteen years of experience, respectively, at the time and $175 per hour for Grieb, who had two years of experience, and another associate attorney, Barbara Long ("Long"), who had three years of experience at the relevant time. Montanez v. Fico, 931 F. Supp. 2d 869, 874-79 (N.D. Ill. 2013), aff'd sub nom. Montanez v. Simon, 755 F.3d 547 (7th Cir. 2014). The Seventh Circuit upheld the determination and observed that these hourly rates were "within the upper middle of the range supported by the evidence from the lawyers' past cases and the rates awarded to other Chicago attorneys in civil-rights cases." Montanez, 755 F.3d at 554-55; see also Blackwell v. Kalinowski, No. 08 C 7257, 2012 WL 469962, at *5 (N.D. Ill. Feb. 13, 2012) (finding an hourly rate of $325 per hour was appropriate for an attorney with eight years of experience and a rate of $295 per hour for an attorney with six years of experience in civil rights cases and had recently settled a case for $1 million and won three jury trials in federal court).

Plaintiffs' attorneys argue that <u>Montanez</u> does not apply here because Grieb, who had three years of experience at the time of this litigation, has doubled her experience since her work on the <u>Montanez</u> matter and has appeared in more than forty-eight civil rights cases, twenty-three of which she served as lead counsel. Grieb's additional year of experience and success, however, is overstated; her experience in this case is similar to Long's experience in <u>Montanez</u> for which she was awarded $175 per hour. Accordingly, the Court finds this "next-best" evidence instructive in determining the appropriate market rate for the work performed in this case. See <u>Montanez</u>, 755 F.3d at 554-55. Because Plaintiffs' attorneys fail to establish a reasonable hourly rate, the Court determines that the hourly rates of $385 for Shiller and Preyar, and $175 for Grieb are appropriate. Accordingly, the loadstar amounts to $34,247.

### 3. *Degree of Success on the Merits*

Defendant Officers argue that the Court should reduce the loadstar amount based upon unnecessary litigation related to Plaintiffs' unsuccessful indemnification claim against the City. In determining a reasonable fee, one of the most important factors is "the degree of success on the merits, especially where a plaintiff is deemed prevailing even though he succeeded on only some of his claims for relief." <u>Id.</u> at 553 (internal quotation marks and citation omitted). According to Defendant Officers, the unsuccessful indemnification claim is unrelated to the claims against the individual defendants and therefore Plaintiffs' attorneys are not entitled to fees for any of the work performed relating to the dismissal of the claim. See <u>Hensley</u>, 461 U.S. at 440 ("Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee."). This argument is wholly without merit. The Seventh Circuit explicitly stated that "indemnification is entangled with the merits of the case." <u>Cavada v. City</u>

of Chi., No. 13 C 1916 (7th Cir. Sept. 10, 2013), ECF No. 65. Indeed, indemnification presupposes liability based upon a § 1983 claim. Although Plaintiffs' indemnification claim was dismissed and their interlocutory appeal was unsuccessful, they nevertheless obtained full relief by accepting the Defendant Officers' offer of judgment on their § 1983 claims. Moreover, the City indemnified the officers in the judgment. See 745 Ill. Comp. Stat. 10/9-102. Substantial or partial success on the merits is not at issue here. Thus, the Court declines to reduce the loadstar amount based upon worked performed and costs incurred relating to the Court's dismissal of the indemnification claim.

## C. Motion for Additional Attorneys' Fees

Plaintiffs' attorneys also seek additional fees in the amount of $10,132.50 for 31.6 hours of work performed in litigating the instant fee petition. Defendant Officers argue that the plain language of the Rule 68 Offer of Judgment precludes the grant of such fees. The purpose of a Rule 68 offer "is to encourage settlement and to discourage protracted litigation." Sanchez v. Prudential Pizza, Inc., 709 F.3d 689, 691 (7th Cir. 2013) (citations omitted). "If the terms of a Rule 68 offer are not specific and clear, there are opportunities for both confusion and mischief." Id. Here, the Rule 68 offer made by Defendant Officers states:

1. Defendants offer to allow judgment to be taken against them collectively and in favor of Plaintiff ALFONSO CAVADA in the amount of TEN THOUSAND ONE AND NO/100 DOLLARS ($10,001.00), <u>plus reasonable attorney's fees and costs accrued to the date of this offer</u> in an amount to be determined by the Court.
2. Defendants offer to allow judgment to be taken against them collectively and in favor of Plaintiff PATRICIA CAVADA in the amount of TWENTY-SEVEN THOUSAND FIVE HUNDRED ONE AND NO/100 DOLLARS ($27,501.00), <u>plus reasonable attorney's fees and costs accrued to the date of this offer</u> in an amount to be determined by the Court.
3. Defendants offer to allow judgment to be taken against them collectively and in favor of Plaintiff RICARDO AGUILAR in the amount of TWO THOUSAND FIVE HUNDRED ONE AND NO/100 DOLLARS ($2,501.00), <u>plus reasonable attorney's fees and costs accrued to the date of this offer</u> in an

> amount to be determined by the Court.
> 4. This Offer of Judgment is inclusive of all claims Plaintiffs have or may have against Defendants, and any other current or former employees or agents of the City of Chicago, arising from the incident or injuries alleged in Plaintiffs' Complaint.
> 5. This Offer of Judgment is subject to the following conditions: It must be accepted by all Plaintiffs against all Defendants. Acceptance of this Offer of Judgment by fewer than all Plaintiffs, or against fewer than all Defendants, shall be deemed a rejection of this offer.
> 6. Pursuant to Fed. R. Civ. P. 68, an offer not accepted within fourteen (14) days after service of the offer shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs.
> DATED this 30th of August, 2013.

Offer of Judgment at 2, Cavada v. City of Chi., No. 13 C 1916 (N.D. Ill. Sept. 27, 2013), ECF No. 57. On September 9, 2013, all Plaintiffs accepted the Rule 68 offer. The Court entered judgment as follows:

> JUDGMENT is hereby entered in favor of Plaintiff Alfonso Cavada and against all Defendants in the amount of $ 10,001.00, in favor of Plaintiff Patricia Cavada and against all Defendants in the amount of $27,501.00, and in favor of Ricardo Aguilar and against all Defendants in the amount of $2,501.00, <u>plus reasonable attorney fees and costs accrued to August 30, 2013</u> in an amount to be determined by the Court.

Judgment at 1, Cavada v. City of Chi., No. 13 C 1916 (N.D. Ill. Sept. 27, 2013), ECF No. 63 (emphasis added). As detailed above, the terms of the Rule 68 offer are specific and clear; they limit recovery of attorneys' fees and costs accrued to the date of the offer, August 30, 2013. By accepting this unambiguous Rule 68 offer, Plaintiffs waived any attorneys' fees incurred after August 30, 2013, including the fees incurred in litigating their fee petition. See Guerrero v. Cummings, 70 F.3d 1111, 1113 (9th Cir. 1995); see also Stephens v. Cirrincione, No. 11 C 6354, 2012 WL 2872448, at *3 (N.D. Ill. 2012) ("When an offer of judgment unambiguously limits recovery of attorney's fees, courts should honor that limitation." (citations omitted)). Because the litigation of the fee petition occurred after August 30, 2013, Plaintiffs' motion for additional attorneys' fees is denied.

### D. Prejudgment Interest on Attorneys' Fees

Finally, Defendant Officers object to paying prejudgment interest on Plaintiffs' Attorneys' fees. However, the Seventh Circuit has long recognized that "prejudgment interest should be <u>presumptively available</u> to victims of federal law violations" because "[w]ithout it, compensation is incomplete and the defendant has an incentive to delay." <u>United States v. Bd. of Educ. of Consol. High Sch. Dist. 230, Palos Hills, Ill.</u>, 983 F.2d 790, 799 (7th Cir. 1993) (internal quotation marks and citation omitted). The Court rejects Defendants' arguments that prejudgment interest is inappropriate here. In its discretion, The Court awards compound prejudgment interest at the current prime rate of 3.25%. See <u>In re Oil Spill by the Amoco Cadiz Off the Coast of France on March 16, 1978</u>, 954 F.2d 1279, 1332 (7th Cir. 1992) ("[C]ompound prejudgment interest is the norm in federal litigation."). The parties agree that the accrual date is October 30, 2013.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for attorneys' fees is granted in part and denied in part, their motion for additional attorneys' fees is denied, and their motion for an order granting prejudgment interest on attorneys' fees is granted. The Court awards $34,247 in attorneys' fees, and $1,307.84 in costs for a total of $35,554.84. Additionally, the Court awards compound prejudgment interest at the current prime rate of 3.25%, accruing from October 30, 2013.

IT IS SO ORDERED.

ENTER: *[signature]*
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: August 18, 2014